UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY, and GEICO
CASUALTY COMPANY,

                Docket No.:
                1:20-cv-01098 (FB)(RER)

                Plaintiffs,

      -against-

YAN MOSHE a/k/a/ YAN LEVIEV, INTEGRATED
SPECIALTY ASC LLC f/k/a HEALTHPLUS SURGERY
CENTER LLC, HACKENSACK SPECIALTY ASC LLC
f/k/a DYNAMIC SURGERY CENTER LLC, EXCEL
SURGERY CENTER, L.L.C., NJMHMC LLC d/b/a
HUDSON REGIONAL HOSPITAL, REGINA MOSHE,
M.D., CITIMEDICAL I PLLC, CITIMED SERVICES, PA,
LEONID SHAPIRO, M.D., NEUROLOGICAL
DIAGNOSTICS PROFESSIONAL ASSOCIATION,
NIZAR KIFAIEH, M.D., and PREMIER ANESTHESIA
ASSOCIATES PA,

                Defendants.
-------------------------------------------------------------------------X

**DEFENDANTS REGINA MOSHE, M.D., CITIMEDICAL I PLLC, CITIMED
SERVICES, PA, NIZAR KIFAIEH, M.D., AND PREMIER ANESTHESIA ASSOCIATES
PA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO
STAY AND ENJOIN DEFENDANTS' COLLECTION PROCEEDINGS**

**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
400 Garden City Plaza, Fifth Floor
Garden City, New York 11530
Tel: 516.355.9696

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................... 2

ARGUMENT .............................................................................................................................. 9

    I.    Legal Standard ............................................................................................................ 9

    II.   Plaintiffs Cannot Establish Irreparable Harm ............................................................ 12

    III.  Plaintiffs Arguments Fail With Regard to Either Avenue
          Through Which They Could Obtain an Injunction ...................................................... 17

          a. Plaintiffs Concede They Cannot Establish a Likelihood of Success
             on the Merits and Have Not Established Sufficiently Serious Questions
             Going to the Merits to Make Them a Fair Ground for Litigation ........................... 17

          b. The Balance of Hardships Tips Decidedly In Defendants' Favor .......................... 19

    IV.  If This Court Grants Plaintiffs' Motion,
          Plaintiffs Should Be Required To Post Bond ............................................................. 21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Avetisyan,*
No. 17-cv-04275(LDH)(RML), 2018 WL 6344249, at *2 (E.D.N.Y. Oct. 30, 2018) .............. 13

*Allstate Ins. Co. v. Elzanaty,*
929 F. Supp. 2d 199,217 (E.D.N.Y. 2013) ............................................................................. 10

*Allstate Insurance Co. v. Harvey Family Chiropractic,*
677 Fed. Appx. 716 (2d Cir. 2017) ........................................................................................ 14

*Brenntag Int'l Chem., Inc. v. Bank of India,*
175 F.3d 245, 249 (2d Cir. 1999) .......................................................................................... 13

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
598 F.3d 30, 35 (2d Cir. 2010). ............................................................................................. 17

*Gov't Employees Ins. Co. v. Cean,*
19-cv-2363 ............................................................................................................................. 11

*Government Employees Insurance Company v. Mayzenberg,*
2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018) ...................................................................... 12

*Government Employees Insurance Company v. Strut,*
No. 19-CV-728V, 2019 WL 6338023, at *9 (W.D.N.Y. Nov. 26, 2019),
*report and recommendation adopted,* No. 19-CV-728 (JLS), 2020 WL 1820500
(W.D.N.Y. Apr. 10, 2020) ............................................................................................... 12, 21

*Government Employees Insurance Company v. Strutsovskiy,*
2017 WL 4837584 at *6 (W.D.N.Y. Oct. 26, 2017) ............................................................. 12

*Government Employees Insurance Co. v. Wellmart RX, Inc.,*
No. 19-cv-04414(KAM)(RLM), 2020 WL 249020 (E.D.N.Y. Jan. 16, 2020) .................. 10, 11

*Grand River Enters. Six Nations v. Pryor,*
2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006) .............................................................. 10

*Green Party of New York State v. New York State Bd. of Elections,*
389 F.3d 411, 418 (2d Cir.2004) ........................................................................................ 9, 19

*Gulf Oil Corp. v. Dep't of Energy,*
514 F.Supp. 1019, 1026 (D.D.C. 1981) ................................................................................ 13

*Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.,*
47 Misc. 3d 137(A) (App. Term 1st Dept. 2015) .................................................................. 20

*Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin.,*
587 F.Supp.2d 1, 11 (D.D.C. 2008) ...................................................................................... 13

*Interlink Int'l Fin. Servs., Inc. v. Block,*
145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) ........................................................................... 21

*Jayaraj v. Scappini,*
66 F.3d 36, 39 (2d Cir. 1995) ................................................................................................ 14

*Liberty Mutual Insurance Co. v. Excel Imaging, P.C.,*
879 F. Supp. 2d. 243, 264 (E.D.N.Y. 2012) .......................................................................... 10

*Mazurek v. Armstrong,*
520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) .................................. 10

*McMahon v. Johnson,*
2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) ............................................................ 9, 19

*Moore v. Consol. Edison Co. of New York*,
    409 F.3d 506, 510 (2d Cir. 2005).............................................................. 13
*Nyack Hospital v. General Motors Acceptance Corp.*,
    8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007) .................................................. 20
*Perkins v. Schriro*,
    2014 WL 2003014, at *2 (E.D.N.Y. May 14, 2014)........................... 9, 17
*Rodriguez v. DeBuono*,
    175 F.3d 227, 234 (2d Cir.1999)............................................................... 12
*State Farm Mutual Automobile Insurance Company v. CPT Medical Services*,
    E.D.N.Y. Case No. 04-cv-0545................................................................. 5
*State Farm Mutual Automobile Insurance Company v. Parisien*,
    352 F.Supp. 3d 215, 234 (E.D.N.Y. 2018).......................................... 11, 17
*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964, 968 (2d Cir.1995).................................................................. 14
*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*,
    618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009) ............................................... 10
*Toxco, Inc. v. Chu*,
    724 F.Supp.2d 16, 30 (D.D.C. 2010) ........................................................ 13
*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969, 975 (2d Cir.1989)............................................................... 13
*UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*,
    660 F.3d 643, 648 (2d Cir. 2011) .............................................................. 10
*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101, 113 (2d Cir. 2003) .............................................................. 13

## Statutes

11 N.Y.C.R.R. § 65-4.4 ............................................................... 2, 15, 20
18 U.S.C. § 1962(c) ........................................................................... 2
18 U.S.C. § 1962(d) ........................................................................... 2
28 U.S.C. § 1651 ................................................................................ 9
28 U.S.C. § 2283 ................................................................................ 9
Fed. R. Civ. P. 65............................................................................ 9, 21
N.J.A.C. 8.43A-7.2 to 8.43A-7.4 ........................................................ 6
N.J.S.A 39:6B-1 to 3.......................................................................... 2
N.J.S.A. 39:6A-1 *et seq* ....................................................................... 2
N.Y. Ins. Law §§ 5101 *et seq*................................................................. 2

<u>**PRELIMINARY STATEMENT**</u>

Defendants Regina Moshe, M.D. ("Dr. Moshe"), CitiMedical I PLLC ("CitiMedical"), CitiMed Services, PA ("CitiMed Services"), Nizar Kifaieh, M.D., and Premier Anesthesia Associates PA ("Premier Anesthesia", collectively "Opposing Defendants") submit this memorandum in opposition to Plaintiffs' motion to stay and enjoin Opposing Defendants' collection proceedings. Opposing Defendants are licensed practicing physicians, and the entities through which they provide medical services, who lawfully provided health care services to insureds injured in motor vehicle accidents, are covered by policies issued by Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (hereinafter altogether "Plaintiffs" or "GEICO"). GEICO seeks to stay 1,049 pending arbitration proceedings for bills reflecting at least $1,800,000 in unpaid no-fault insurance benefits with regard to CitiMedical, 857 pending arbitration proceedings reflecting at least $2,130,000 in unpaid medical benefits with regard to CitiMed Services, and 1,308 pending arbitration proceedings reflecting at least $2,130,000 in unpaid no-fault insurance benefits with regard to Premier Anesthesia. These amounts specifically relate to bills submitted to GEICO for payment of medical services provided to its insureds. The entirety of GEICO's motion for stays and injunctive relief is founded on unsupported allegations and mere conjecture. Moreover, the basis proffered is a transparent attempt to create an illusion of fraud so as to permit GEICO to avoid paying the outstanding claims. As such, Plaintiffs in this matter should be denied.

First, GEICO cannot demonstrate irreparable harm due to potentially inconsistent rulings from No-Fault arbitrations or Civil Court actions. Second, the balance of hardships that would

result from the imposition of the stay and injunctions sought by GEICO undeniably tips in favor of denial of same.

In bringing this motion, GEICO ignores the existence of the long-standing, comprehensive, state regulatory framework for the adjudication of disputed no-fault insurance claims in New York. By attempting to deal with these bills in a wholesale fashion, GEICO is not only trying to avoid its obligations under the promulgated laws and regulations, but is also blatantly engaging in forum-shopping.

## STATEMENT OF RELEVANT FACTS

This action purports to be a civil RICO action (18 U.S.C 1962(c) and (d)), with additional causes of action for common law fraud, aiding and abetting fraud, unjust enrichment and violation of New Jersey Insurance Fraud Prevention Act.  Plaintiffs are seeking, *inter alia*, the recovery of more than $25,000,000.00 paid to several medical providers and facilities they own under New York and New Jersey's no-fault system of reimbursement for motor vehicle accident victims (N.Y. Ins. Law §§ 5101 *et seq*. and 11 NYCRR §§ 65 *et seq*.; N.J.S.A. 39:6B-1 to 3 and N.J.S.A. 39:6A-1 *et seq*.)  Additionally, Plaintiffs seek a declaratory judgment absolving them from payment of more than $60,000,000.00 in pending no-fault insurance claims submitted by, *inter alia*, CitiMedical, CitiMed Services, and Premier Anesthesia.

Dr. Moshe is a medical doctor who has been licensed in the States of New York and New Jersey since 2012.  Moshe Aff. ¶ 2.  She is also the owner of CitiMedical and CitiMed Services. Moshe Aff. ¶ 3.  CitiMedical was registered as a Domestic Professional Service Limited Liability Company in the State of New York on November 30, 2012.  Moshe Aff. ¶ 4. CitiMed Services was registered as a Domestic Professional Corporation in the State of New Jersey on October 13, 2016.  Moshe Aff. ¶ 4.   CitiMedical and CitiMed Services are established healthcare providers in the New York and New Jersey metropolitan area, having grown to more than a dozen locations.

Moshe Aff. ¶ 5.  Dr. Moshe's practices employ numerous physicians who are qualified to provide patients with a comprehensive range of services, from psychology to podiatry.  Moshe Aff. ¶ 5.

Contrary to Plaintiffs' assertions, Dr. Moshe funds and controls her own practices.  Yan Moshe, a co-defendant in this action, is Dr. Moshe's brother and is the legal owner of several medical facilities. Moshe Aff. ¶ 7.  However, Yan Moshe's entities exist completely separate and apart from CitiMedical and CitiMed Services, and he has never had control or ownership in CitiMedical or CitiMed Services. Id.  Yan Moshe did not provide the startup capital for CitiMedical or CitiMed Services, and does not direct or control their finances, including costs incurred by the practices or how funds are spent. Id. Yan Moshe does not direct or control patient referrals from CitiMedical or CitiMed Services to other practices, facilities, or physicians, nor does he control any other aspects of patient care at CitiMedical or CitiMed Services, including the diagnoses or the course of treatment provided. Id. As the owner of CitiMedical and CitiMed Services, Dr. Moshe has and continues to contribute to the growth of her companies, which are viable and fully operational.  Id.

Dr. Moshe relies on reimbursements from insurance companies for services provided to patients to cover such expenses as employee payroll, utilities, equipment leases and maintenance, rent and other business costs associated with running the medical facilities. Moshe Aff. ¶ 13.  GEICO is one of the largest insurance carriers, accounting for approximately 33% of the total market shares of no-fault policies in New York and approximately 20% of the total market shares of no-fault policies in New Jersey; therefore, a majority of the no-fault patients treated at CitiMedical and CitiMed Services are covered by GEICO policies. Id.  A delay resulting from a stay and/or injunction in this matter would cause severe strain on Dr. Moshe's ability to effectively ruin her medical practice.  This would only be exacerbated by the risk of policy exhaustion for

JS/D229665/FL2946

each individual patient's policy during the pendency of this litigation, if the requested stay were to be granted, as such exhaustion would render the subject bills worthless. Further, like many medical practices, Dr. Moshe's medical practices have not been spared from the hardships of the COVID-19 pandemic Moshe Aff. ¶ 16.  Both CitiMedical and CitiMed Services were forced to close their doors during the height of the pandemic and transition to telemedicine in an effort to meet the needs of their patients.

Nizar Kifaieh is a medical doctor who has been licensed in the States of New York (2002) and New Jersey (2005).  Kifaieh Aff. ¶ 2. Dr. Kifaieh owns Premier Anesthesia, which he purchased from Leonid Shapiro on July 1, 2018.  Kifaieh Aff. ¶ 6.  The entity was originally registered as an anesthesia practice by Leonid Shapiro ("Dr. Shapiro") in the State of New Jersey on November 14, 2007.  Kifaieh Aff. ¶ 6.  Since the purchase of the entity, Dr. Kifaieh has maintained full control and ownership over Premier Anesthesia.  *Id*.

Plaintiffs' Complaint asserts they are entitled to relief based on the following generally plead allegations:

> (i) the Defendants were not in compliance with all significant laws and regulations governing healthcare practice and/or licensing laws and, as a result, were not eligible to receive no-fault reimbursement in the first instance;
> (ii) the Fraudulent Services were not provided in compliance with all significant laws and regulations governing healthcare practice and/or licensing laws, and. Therefore, were not eligible for no-fault reimbursement in the first instance;
> (iii) the Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; and
> (iv) the billing codes used for the Fraudulent Services misrepresented an exaggerated the levels and types of services that purportedly were provided in order to inflate the charges submitted to GEICO.

Further, Plaintiffs allege the Defendants at all relevant times had knowledge of (i)-(iv) above, and as such, never had any right to be compensated by Plaintiffs for the claims at issue.  Complaint, ¶¶

3-5.  In support of their motion, rather than point to any specific, supported facts that Plaintiffs deem entitle them to the extraordinary relief sought, Plaintiffs simply defer to the allegations "as much more fully set forth in the Complaint," and point to the paragraphs of the Complaint that Plaintiffs deem further support their contentions.  Plaintiffs defer to the Complaint despite the fact that it contains no more than conclusory allegations and utterly fails to allege with any particularity facts that could possibly substantiate such allegations.

Specifically, Plaintiffs' memorandum in support of their motion contains a laundry list of unsupported allegations, which, as detailed below, are legally and factually insufficient to warrant the relief sought.  First, Plaintiffs state that co-defendant Yan Moshe made large amounts of money through no-fault fraud schemes and was seeking new opportunities, *i.e.*, through Opposing Defendants.  Plaintiffs list six law suits to support this allegation.[1]  Leaving aside that a lawsuit is proof of nothing, it is notable that these lawsuits either did not name Yan Moshe as a defendant, or were voluntarily dismissed as against Yan Moshe.  There was no finding of liability for insurance fraud with regard to Yan Moshe in <u>any</u> of the cited cases.  As such, this argument from which <u>all of the Plaintiffs' other theories</u> of liability flow, is no more than a foundation built on shifting sand.

Next, Plaintiffs contend that co-defendant Yan Moshe established ambulatory care facilities that were unlawfully operated because said medical director was not "legitimate."  Although Plaintiffs list each violation the NJDOH issued to the facilities, and note that the original medical director at Excel Surgery was ordered to cease and desist from the practice of medicine, Plaintiffs fail to cite to <u>a single</u> instance where any of the ambulatory care facilities was found to

---

[1] Although that it appears that Plaintiffs cite seven lawsuits listed that allegedly support their contention, *State Farm Mutual Automobile Insurance Company v. CPT Medical Services*, E.D.N.Y.  Case No. 04-cv-5045 is listed twice.

be out of compliance with N.J.A.C. 8.43A-7.2 – N.J.A.C. 8:43A-7.4, which as set forth by Plaintiffs:

> require every ambulatory care facility in New Jersey to have a physician on staff as medical director to "be responsible for the direction, provision, and quality of medical services provided to patients", including "[d]eveloping and maintaining written objectives, policies, a procedure manual, an organizational plan, and a quality assurance program for the medical service", and "[e]nsur[ing] that medical staffing patterns are implemented". The medical director also must develop, implement, and review "written medical policies, including medical staff bylaws, in cooperation with the medical staff." The medical director, or another physician designated by the medical director in writing, must be available to the ambulatory care facility "at all times".

Complaint, ¶ 68. Specifically, not one of the four separate lists of violations issued by NJDOH against co-defendant Yan Moshe's ambulatory care facilities set forth in Plaintiffs' Complaint contains a violation of N.J.A.C. 8.43A-7.2 – N.J.A.C. 8:43A-7.4 for operating without a medical director present. Complaint, ¶¶ 105, 115, 133, 147. Thus, Plaintiffs' allegation that co-defendant Yan Moshe's ambulatory medical centers were unlawfully operated because they did not have a legitimate medical director is factually unsupported and fails.

Next, Plaintiffs allege that co-defendant Yan Moshe's ownership of Hudson Regional was used as a vehicle to submit fraudulent no-fault insurance billing. Plaintiffs' memorandum, p. 4. Plaintiffs cite their Complaint to support this allegation, which baldly states that the hospital "was operated in pervasive violation of the pertinent regulatory and operating requirements," without specifying a single specific regulation that was allegedly violated by the hospital. Complaint, ¶ 20. Further, this allegation is in stark contrast to Hudson Regional's operation as a healthcare facility providing a full range of medical services to a wide range of patients; care that is not limited to patients with no-fault insurance.

Finally, Plaintiffs speciously conflate the unsubstantiated conjecture described above and make the leap that to generate referrals for his ambulatory surgery centers and Hudson Regional

Hospital, Yan Moshe unlawfully owned and/or controlled several medical practices, i.e., CitiMedical and CitiMed Services, without any evidence to substantiate this threadbare allegation. These entities, however, are both owned and operated by Dr. Moshe, a physician licensed in the States of New York and New Jersey. Moshe Dec. ¶ 2. Plaintiffs' Complaint states that Dr. Moshe "was not a candidate for highly remunerative employment as a physician" as "[s]he had attended a for-profit medical school outside of the United States, had only recently been licensed to practice medicine, and had not yet been board certified in any medical specialties." Complaint, ¶ 157. However, in making these arguments, aside from revealing a level of pettiness which is inappropriate in a court of law, Plaintiffs fail to cite any law or regulation that requires a physician to attend medical school in the United States, to have a certain amount of experience, or to be board certified in any particular specialty prior to owning a medical practice in New York or New Jersey. Conversely, Dr. Moshe was duly qualified to own a medical practice in both New York and New Jersey, having obtained a medical degree in 2009 from Ross University School of Medicine and being licensed in both states in 2012. Moshe Dec. ¶ 2.

Plaintiffs further allege that CitiMedical unlawfully referred patients to Yan Moshe's ambulatory care facilities and/or Hudson Regional without disclosing Moshe's interests in the ambulatory surgery centers or the hospital. This allegation is demonstrably false. CitiMedical and CitiMed Services, as well as the ambulatory surgery centers owned by Yan Moshe, do however provide patients with disclosures setting forth the familial relationship between Regina Moshe and Yan Moshe and their respective entities on the occasions that procedures are perform there.[2] Moshe Dec. ¶ 9. Hence, the performance of any procedures is in full compliance with all

---

[2] Despite Plaintiffs' assertions that Yan Moshe has an ownership interest in CitiMedical and CitiMed Services, he has no such interest in either entity, as reflected in the disclosures. See Moshe Dec. Ex. 3.

applicable laws and Plaintiffs' continued reliance on this fact in support of the extreme relief sought in the instant motion rings hollow.

Plaintiffs' vague assertion that "Shapiro and Kifaieh did not personally perform any significant amount of the healthcare services that were billed through Premier Anesthesia," (Complaint, ¶ 298) is irrelevant with regard to showing ownership and/or control of the entity. Dr. Kifaieh testified that he oversaw the billing from a revenue perspective (88:21-24); he also testified that Yan Moshe was not involved in the sale of Premier Anesthesia from Dr. Shapiro to himself, and that Yan Moshe has no financial interest in Premier Anesthesia (57:3-8; 74:16-18).

Despite Plaintiffs' assertions that the allegations against Defendants "are not pleaded in a vacuum," but rather are "supported by a credible, fact-laden narrative, and detailed, claim-specific examples of Defendants' fraudulent conduct" (Plaintiffs' Memorandum, p. 5), with regard to the Opposing Defendants, Plaintiffs do not support their allegations with anything more than conclusory statements and conjecture regarding the ownership and control of the Opposing Defendants' medical practices. Further, as set forth above, Plaintiffs attempt to taint the record by making allegations that are clearly not supported by any facts presented in the Complaint or in Plaintiffs' Memorandum, *e.g.,* the facts alleged in Plaintiffs' motion do not support Plaintiffs' assertion that Yan Moshe's ambulatory surgery centers operated without a true medical director. As such, the "credible, fact-laden narrative" amounts to no more than smoke and mirrors, designed to obfuscate Plaintiffs' ultimate goal, to avoid payment on legitimate claims of their insureds.

Lastly, Plaintiffs use their allegation that the practices were illegally operating in concert together to support their allegation that the services rendered to each GEICO insured was medically unnecessary. Specifically, Plaintiffs aver that the similar medical diagnoses that each patient received while treating at Citimedical and Citimed Services was the result of Yan Moshe's

control over each practice, rather than the fact that each patient was being treated for injuries sustained during automobile accidents. Neither Plaintiffs' Memorandum nor Complaint cites any medical expert to support their allegations that the services rendered to the subject patients lacked medical necessity.

## ARGUMENT

For the reasons set forth below, Plaintiffs' motion should be denied.

**I**. **Legal Standard**

Plaintiffs' seek to stay all pending no-fault insurance collection arbitrations, and to enjoin Defendants from commencing any further no-fault insurance collection arbitrations or litigation against GEICO pending the disposition of GEICO's claims in this action "pursuant to Fed. R. Civ. P. 65 and the Court's inherent power".[3],[4]  Motion, p. 1.  To prevail on such a motion, the Plaintiffs must establish that they will suffer irreparable harm absent the injunction and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) *citing Green Party of New York State v. New York State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir.2004). *See also Perkins v. Schriro*, 2014 WL 2003014, at *2 (E.D.N.Y. May 14, 2014)(the failure to present a factual basis for likelihood of success on the merits warrants

---

[3] Plaintiffs also seek to enjoin the American Arbitration Association, National Arbitration Forum, Forthright Solutions, Inc., and any other arbitral forum from accepting the filing of any arbitration demand by or on behalf of any of the Defendants seeking payment from GEICO, or issuing any awards involving arbitration between the Defendants and GEICO, pending the disposition of GEICO's claims in this action.  It is unclear, however, how the Court would obtain jurisdiction over such parties with regard to this litigation.
[4] Plaintiffs' reference to the "court's inherent powers" ostensibly refers to the All Writs Act, All Writs Act ("AWA"), 28 U.S.C. §1651.  However, the AWA is limited by the Federal Anti-Injunction Act, 28 U.S.C. § 2283, which expressly prohibits a federal court from enjoining a state court proceeding as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  As Plaintiffs fail to assert that an injunction is necessary in aid of the Court's jurisdiction, and further does not assert that Plaintiffs would be unable to effectuate any judgment against Opposing Defendants, the AWA does not apply, and the Court has no authority beyond that which permitted pursuant to Fed. R. Civ. P. 65.

denial of application).  Courts have considered the dual request for a stay and injunction of future proceedings in tandem, utilizing the same standard. *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199,217 (E.D.N.Y. 2013).

Such relief is "one of the most drastic tools in the arsenal of judicial remedies." *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision),* 618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009) (quoting *Grand River Enters. Six Nations v. Pryor*, 2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006).  Within the context of a motion to stay a FINRA arbitration, the Second Circuit has held "preliminary injunction is an extraordinary remedy never awarded as of right." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011).

The Supreme Court has explained that the burden on a movant seeking a preliminary injunction is even higher than a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) ("[at] issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher.").  A party seeking such drastic relief must make a "clear showing" of entitlement. *Id.*  Plaintiffs fail to show any such entitlement.

GEICO states that "District Courts within the Second Circuit" have stayed and enjoined defendant healthcare providers' no-fault collections arbitration during the pendency of plaintiff-insurers' fraud and declaratory judgment actions, based on application of the identical preliminary injunction standard[5], citing, *inter alia*, *Government Employees. Insurance Co. v. Wellmart RX, Inc.,* No. 19-cv-04414(KAM)(RLM), 2020 WL 249020 (E.D.N.Y. Jan. 16, 2020),

---

[5] Plaintiffs cite *Liberty Mutual Insurance Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d. 243, 264 (E.D.N.Y. 2012) as applying preliminary injunction standard to enjoin no-fault collections arbitrations.  However, in *Excel Imaging*, this standard was not in play as the Court was determining defendants' motion to compel arbitration.

a recent decision in which GEICO was successful in obtaining the relief requested herein. However, concerns that were dispositive in *Wellmart* are not at issue in the instant litigation. In *Wellmart*, the Court found the "critical fact looming over the proceedings" was that "[t]he record strongly suggests that Wellmart is rendering itself judgment-proof to frustrate any potential money judgment awarded to GEICO." Specifically, Wellmart ceased operations and sold its assets, and Wellmart's bank statements strongly suggested the methodical depletion of assets to frustrate a potential judgment. *Gov't Employees Ins. Co. v. Wellmart RX, Inc.*, No. 19CV04414KAMRLM, 2020 WL 249020, at *7 (E.D.N.Y. Jan. 16, 2020). With Dr. Moshe's well-established and growing practice thriving throughout the New York Metropolitan area, there are no similar concerns in this case, and Plaintiffs have not even suggested that there is any evidence of a depletion of assets. Moshe Dec. ¶7. Further, there are simply no allegations that Dr. Kifaieh is attempting to deplete any assets.

Further distinguishing the cases cited by Plaintiffs to support their contention that the same standard has consistently been applied to enjoin no-fault collections arbitration is the fact that the factual allegations in the cited cases were based on more than attorney conjecture. See *Gov't Employees Ins. Co. v. Cean*, 19-cv-2363, (the holding with regard to the unopposed motion not analogous as the complaint cited to a criminal indictment and guilty plea of a co-conspirators for health care fraud and included multiple exhibits detailing the fraudulent claims); *State Farm Mutual Automobile Insurance Company v. Parisien*, 352 F.Supp. 3d 215, 234 (E.D.N.Y. 2018) (State Farm has "adequately detailed a complicated scheme of alleged fraud activity" where it submitted detailed grids purporting to show the initial evaluations made of patients, the services and supplies rendered, and how those services and supplies were billed, provided copies of documents allegedly containing false statements by some of the Defendants, and presented a sworn

affidavit on behalf of Defendant containing apparently false information); *Government Employees Insurance Company v. Mayzenberg*, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018)(concluding there was more than a likelihood of proving that Mayzenberg conspired in illegal fee-splitting, kickback, and referral arrangement after "a review of the Amended Complaint, the Exhibits submitted with the motion, and Mayzenberg's testimony", with such exhibits including ding bank records, certificates of incorporation, financial records and checks); *Government Employees Insurance Company v. Strut*, 2019 WL 6338023 (W.D.N.Y. Nov. 26, 2011) at *2-3, 9, *report and recommendation adopted*, 2020 WL 1820500 (W.D.N.Y. April 10, 2020)(the "prior circumstances" including a guilty plea to a criminal indictment "knowingly and willfully make materially false and fraudulent statements and representations in connection with the delivery of, and payment for, health care services" added some context to the considerable detail that GEICO has placed in the present complaint"); and *Government Employees Insurance Company v. Strutsovskiy*, 2017 WL 4837584 at *6 (W.D.N.Y. Oct. 26, 2017)(GEICO presented evidence including "(1) Strutsovskiy's felony conviction in connection with an insurance fraud scheme involving the systematic submissions of fraudulent Medicare billing for medically unnecessary and illusory services; (2) his dire financial straits; (3) the boilerplate language in his initial examination reports which did not vary among patients; and (4) the declarations of two physicians concluding that the defendants routinely misrepresented the complexity of the problems presented by GEICO insureds whom the defendants purported to treat and routinely prescribed large amounts of narcotics and other habit-forming drugs to GEICO insureds who did not need them.").

## II. Plaintiffs Cannot Establish Irreparable Harm

It is well settled that showing irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d

Cir.1999). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) (internal quotations omitted). *See also Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (explaining that irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied"). This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated *Allstate Ins. Co. v. Avetisyan*, No. 17-cv-04275(LDH)(RML), 2018 WL 6344249, at *2 (E.D.N.Y. Oct. 30, 2018).

Where the damages sought in an underlying lawsuit are exclusively monetary in nature, it has been frequently noted that irreparable harm does not exist. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). *See also Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)(irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate"). For economic injury to be irreparable, a plaintiff must show that it will suffer harm that is "'more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff.'" *Toxco, Inc. v. Chu,* 724 F.Supp.2d 16, 30 (D.D.C. 2010) (*quoting Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin.*, 587 F.Supp.2d 1, 11 (D.D.C. 2008)). "Purely economic harm is not considered sufficiently grave under this standard unless it will cause extreme hardship to the business, or even threaten destruction of the business." *Id*. (*quoting Gulf Oil Corp. v. Dep't of Energy*, 514 F.Supp. 1019, 1026 (D.D.C. 1981). Irreparable harm is also predicated on urgency. When a party knows the potential injury but fails "to act sooner, the sense of urgency that ordinarily accompanies a motion for preliminary relief is

undercut and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir.1995).

In *Allstate Insurance Co. v. Harvey Family Chiropractic,* 677 Fed. Appx. 716 (2d Cir. 2017), a RICO case against a no-fault healthcare provider, wherein the carrier, Allstate Insurance Company, sought an injunction against pending and future state court litigations and arbitrations in New York's No-Fault System, the Second Circuit unambiguously held that the necessity to go forward with underlying state claims during the pendency of the federal action was not by any means "irreparable harm" so as to justify that the state proceedings be enjoined. Specifically, the Court held:

> There is no evidence in the record that, upon the conclusion of this matter, the plaintiffs cannot be fully compensated through money damages for the alleged harm suffered from the defendants' fraudulent claims. **Even if the defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the plaintiffs are free to recover those payments should they prevail on their RICO claim. Moreover, the "mere injuries ... in terms of money, time and energy necessarily expended" absent a stay of ongoing state court and arbitration proceedings "are not enough" to establish irreparable harm.** *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir. 1995) (internal quotation marks omitted). Nor is the declaratory relief sought by the plaintiffs threatened by the other proceedings.

*Allstate Ins. Co. v. Harvey Family Chiropractic,* 677 F. App'x 716, 718 (2d Cir. 2017) (emphasis added).

GEICO Claims Manager Robert Weir posits that if the subject claims are permitted to proceed in arbitration, Plaintiffs will be irreparably harmed due to the "risk of multiple inconsistent judgments," and because insurers, like GEICO, are unable to "present complex fraud claims and defenses in the context of New York's expedited no-fault arbitration system" as there is no substantive discovery process and the parties are typically restricted to 15-minute hearing slots. Weir Declaration, ¶13-26. While it is true that the American Arbitration Association (AAA)

administers a program in New York State, which is designed to provide consumers, health service providers, and insurance carriers with a forum for the *speedy* resolution of disputes concerning claims for benefits under No-Fault automobile insurance, the program also affords more robust options for parties presenting with more complicated No-Fault disputes. See, AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Specifically, 11 N.Y.C.R.R. § 65-4.4, which establishes the Insurance Department Arbitration forum procedures, provides for the following:

(a) <u>Consolidation</u>—If the claims involved arose out of the same accident and involve common issues of fact;

(b) <u>Evidence</u>—The arbitrator or an attorney of record in the arbitration may subpoena witnesses or documents upon the arbitrator's own initiative or upon the request of any party, when the issues to be resolved require such witnesses or documents. See, 11 NYCRR 65-4.4(e) and 11 NYCRR 65-4.5(o)(2).

(c) <u>Extended Hearing Slots</u>—Each hearing is slotted for fifteen (15) minutes unless the parties request additional time. For example, parties may require additional time to allow testimony by witnesses. AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Based on the foregoing, it is clear that, despite Claims Manager Weir's assertions to the contrary, the nature of the No-Fault AAA forum does not render it "impractical for an arbitrator to adequately consider a pattern of fraudulent treatment." Weir Declaration, ¶ 26. Rather, Plaintiffs need only avail themselves of these procedures afforded in the AAA forum in order to adequately defend themselves against what they allege are fraudulent claims. Plaintiffs, therefore, will not

suffer irreparable harm absent the requested relief, nor will they suffer or even allege extreme hardship or possible destruction of the business.

Instead, it is Opposing Defendants who will suffer severe injury to their medical practices if they are not able to continue with their efforts to obtain payment on claims that have already been outstanding for a significant period of time. Medical providers rely on the timely payment of claims to conduct their business, *i.e.*, to cover such expenses as payroll, insurance, rent, etc. A cessation of such payments directly impedes a providers' ability to continue to run a practice. Further, as discussed *infra*, a prolonged delay in obtaining payment, such as the delay that would arise from a stay of all collections proceedings for claims that are the subject of this litigation, subjects Defendants to the added risk of policy exhaustion. If policy exhaustion were to occur during the pendency of a stay, from bills submitted by other providers, upon the lifting of the stay Defendants would precluded from ever receiving payments from policies that were exhausted. The longer payment to Defendants is delayed, the greater the risk of policy exhaustion. Guzman Aff. ¶ 11.

The Plaintiffs are also the single largest provider of No-Fault insurance in New York and New Jersey, and maintain approximately a 33% and 20% market share, respectively. Guzman Aff ¶ 11. When viewed in conjunction with the very real threat of policy exhaustion, as well as from a cash flow basis, a grant of a stay for all GEICO collections presents an existential threat to the Opposing Defendants. This is a fact of which GEICO is well aware. Further, it is respectfully submitted that the real intent behind Plaintiffs' motion is to force the Opposing Defendant into an untenable financial position and compel their ultimate capitulation.

## III. Plaintiffs Arguments Fail With Regard to Either Avenue Through Which They Could Obtain an Injunction

### a. Plaintiffs Concede They Cannot Establish a Likelihood of Success on the Merits and Have Not Established Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation

Plaintiffs cite several previous decisions to justify their failure to show a likelihood of success on the merits. Specifically, Plaintiffs concede that "any likelihood of success inquiry would be premature." Plaintiffs' Memorandum at 15 (citing *Parisien* at *36).

Further, Plaintiffs have not established a "sufficiently serious questions going to the merits to make them a fair ground for litigation". The Second Circuit has held that the overall burden of the "serious questions" standard is "no lighter" than the "likelihood of success" standard, because it requires the balance of hardships to "decidedly" tip in the movant's favor. See *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The failure to present a factual basis for likelihood of success on the merits warrants denial of application. *Perkins,* 2014 WL 2003014, at *2. Plaintiffs have not demonstrated they have competent proofs, beyond the conclusory allegations, to satisfy either the likelihood of success or the serious question standard.

First, despite Plaintiffs' contention that it has set forth "well-pleaded allegations" and "considerable evidence," to support its allegations, those allegations, and the purported evidence, are severely lacking. With regard to Dr. Moshe, Plaintiffs rely purely on attorney argument to substantiate their allegation that Yan Moshe, instead of Dr. Moshe, is the true owner of CitiMedical and CitiMed Services. Absent are sworn statements of any kind, bank records, records for state licensing boards or the Departments of State supporting even a single one of Plaintiffs' allegations. Plaintiffs question Dr. Moshe's qualifications to provide medical services, and the extent to which she provides services, yet the extent of their factual support for this is

nothing more than a simple list of examples in which Plaintiffs allege Dr. Moshe herself "caused an insured" to be referred to another facility "at (Yan) Moshe's direction." Complaint, ¶ 185. Not surprisingly, Plaintiff does not even attempt to provide its good faith basis for the assertion that the referral of the patient was "at [Yan] Moshe's direction" for that would require an actual factual basis and would be a stark departure from the fanciful and unsupported conspiracy theory which is the Plaintiffs' Complaint.

With regard to Dr. Kifaieh, the Complaint contains no support for the allegations that he did not actually own and/or control Premier Anesthesia beyond cherry-picked snippets of EUO testimony taken grossly out of context. The hoopla is belied by Dr. Kifaieh's actual EUO testimony. For example, where Plaintiffs allege that Dr. "Kifaieh did not know when Premier Anesthesia was incorporated, or whether anyone invested any start-up capital into Premier Anesthesia, a medical practice he supposedly owned," it was because, as Dr. Kifaieh explained during the EUO, he was not at all involved with Premier Anesthesia at the time it was incorporated and therefore did not have personal knowledge of the circumstances related to incorporation or investment capital. Kifaieh Aff. ¶ 8. Similarly, although Plaintiffs attempt to cast a shadow over the transfer of ownership from Dr. Shapiro to Dr. Kifaieh by alleging that Dr. "Kifaieh did not pay Shapiro any money in exchange for his purported 'ownership' interest in Premier Anesthesia, nor did Shapiro retain any interest in Premier Anesthesia's accounts receivable following the purported 'sale,'" the justification for the lack of payment – i.e., the fact that Premier Anesthesia was operating at a significant loss - was also explained during the EUO. Kifaieh Aff. ¶ 9. Plaintiffs also blatantly disregarded Dr. Kifaieh's testimony that he was not added to the corporate bank account for Premier Anesthesia due in large part to corporate formalities and attorney availability. Kifaieh Aff. ¶ 14. Although Plaintiffs cite examination

under oath testimony to support these allegations, the transcript containing the full context of testimony is not included as an exhibit to their moving papers or the Complaint. It is respectfully submitted that the omission of the actual transcript from Plaintiffs' moving papers was no mistake, but rather by design.

Further, Plaintiffs cite various cases to support their contention that "numerous courts have concluded – under identical circumstances – that the balance of hardships tips in the plaintiff-insurer's favor". However, unlike Plaintiffs' complaint, the allegations in the cases relied on by Plaintiffs were actually supported by substantial factual basis. See, *e.g*., discussion on cited cases *infra*. As such, despite Plaintiffs assertions, the cited cases are not analogous and do nothing to establish a serious question going to the merits to make them a fair ground for litigation.

### b. The Balance of Hardships Tips Decidedly In Defendants' Favor

When a party moves for a preliminary injunction asserting that there are "sufficiently serious questions going to the merits," as argued by Plaintiffs herein, the movant must also demonstrate "a balance of hardships decidedly tipped in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) *citing Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir.2004). Here, however, the balance of hardships weighs overwhelmingly in favor of Defendants due to the very real and present threat of policy exhaustion, which jeopardizes Defendants' ability to obtain <u>any</u> reimbursement for the valid medical treatment that they collectively rendered to these many patients, should the Court grant the stay and other injunctive relief sought by Plaintiffs. This detrimental impact to Defendants is only exacerbated by the substantial financial burden on the medical industry caused by the Covid-19 pandemic and the significant market share of the No-

Fault market possessed by Plaintiffs.

It is a basic tenet of the no-fault statutory framework is that there are a finite amount of no-fault benefits available under each automobile insurance policy, statutory minimum amount of required coverage being $50,000.00 in New York and $15,000 in New Jersey. Once the no-fault insurer has issued a sufficient number of payments to exhaust the policy limits, any medical provider seeking reimbursement for services rendered will find its claim denied on the grounds of policy exhaustion, and will be unable to recover from the no-fault insurer.

The prevailing law favors the no-fault insurer in this regard; there are almost no circumstances where the insurer can be required to issue payments over and above the policy limits, with limited exceptions for certain types of bad faith or mishandling of claims by the insurer. *See generally,* 11 NYCRR § 65-3.15; *Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.*, 47 Misc. 3d 137(A) (App. Term 1st Dept. 2015); *Nyack Hospital v. General Motors Acceptance Corp.,* 8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007). As such, policy exhaustion effectively forecloses the healthcare provider's ability to recover from the no-fault insurer.

Accordingly, a stay of the collection proceedings would not only be detrimental to Defendants, but would permanently prejudice Defendants' ability to recover on those claims, even if Plaintiffs' instant declaratory judgment action is ultimately unsuccessful. As GEICO could and would continue to pay out on other claims during the period of the stay to non-defendant medical providers exhausting the available funds, the stay could result in a virtually irreversible bar to Defendants' recovery from Plaintiffs, regardless of the outcome of the litigation. Thus, there is no basis for Plaintiffs' suggestion that the Defendant medical providers "would suffer no real injury" if the pending arbitrations were stayed and Defendants enjoined from filing any future no-fault collection actions against Plaintiffs. Plaintiffs' Memorandum at

16. In contrast, if those collection actions are allowed to proceed, and Plaintiffs do prevail in this litigation, Plaintiffs will still have recourse and an opportunity to pursue reimbursement of those funds if they are ultimately successful in the instant litigation.

Plaintiffs assert that the balance of hardships favors granting the stay because it would be "most efficient" for the claims to be determined in one action. Plaintiffs' Memorandum at 16. While efficiency is certainly a worthy goal, the danger of not being able to collect on the claims at all – regardless of the ultimate outcome of this litigation – is a significantly weightier threat, tipping the balance of hardships definitively in favor of the Defendant.

The hardship on Defendants resulting from a delay in collecting insurance benefits from Plaintiffs for services provided to their insureds is further exacerbated by the financial toll caused by the Covid-19 pandemic, which essentially halted the operation of the Opposing Defendants' medical practices in an effort to preserve the capacity of the healthcare system and to combat the further spread of the virus. This resulted in a substantially decreased revenue stream from all sources during the first half of 2020.

## IV. If This Court Grants Plaintiffs' Motion, Plaintiffs Should Be Required To Post Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Security furnished under Rule 65(c) will not include any damages for claims against the party who instituted the action other than those directly attributable to the improvidently issued injunction." *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). Plaintiff insurance carriers have previously been required to post such bond in this district. See *Gov't Employees Ins. Co. v. Strut*, No. 19-CV-728V,

2019 WL 6338023, at *9 (W.D.N.Y. Nov. 26, 2019), *report and recommendation adopted,* No.

19-CV-728 (JLS), 2020 WL 1820500 (W.D.N.Y. Apr. 10, 2020)("In the event that GEICO does

not ultimately prevail, some protection should be in place for payments that defendants will not be

receiving. GEICO itself suggested in the complaint that, as of June 2019, approximately $500,000

in pending no-fault insurance claims potentially had to be paid. That number should suffice, as it

is grounded in actual pending claims and is not speculative.")(internal citations omitted).

Further, despite Plaintiffs' assertions that "movant has not demonstrated any proof of

likelihood of actual harm," in actuality, defendants have shown substantial likelihood of harm if

the Court grants the relief sought in Plaintiffs' motion. As such, if Plaintiffs' motion is granted,

Plaintiffs should be required to post bond sufficient to cover the amount of the pending claims.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' motion to stay and enjoin Defendants' collection

proceedings with regard to the claims submitted to Plaintiffs for medical services legally provided

to patients insured by one of Plaintiffs' no-fault insurance policies should be denied.

Dated: Garden City, New York
      June 15, 2020

          **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
          *Attorneys for Defendants, Regina Moshe, M.D.,*
          *CitiMedical I, PLLC, CitiMed Services, PA, Nizar*
          *Kifaieh, M.D., and Premier Anesthesia Associates PA*

      By:    */s/Charles Horn*              
            Charles Horn
            400 Garden City Plaza, Suite 500
            Garden City, New York 11530
            Tel: 516.355.9696

                                                    JS/D229665/FL2946